IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK
_____

UNITED STATES OF AMERICA,

             v.                                24-CR-6161 FPG

KATHERINE MOTT-FORMICOLA,

             Defendant.
_____

## PLEA AGREEMENT

The defendant, KATHERINE MOTT-FORMICOLA, and the United States Attorney for the Western District of New York (hereinafter "the government") hereby enter into a plea agreement with the terms and conditions as set out below.

### I.    THE PLEA AND POSSIBLE SENTENCE

1. The defendant agrees to waive indictment and to plead guilty to a two-count Information charging:

    a.    In Count 1, a violation of Title 18, United States Code, Section 1344 (Financial Institution Fraud), for which the maximum possible sentence is a term of imprisonment of 30 years, a fine of $1,000,000, a mandatory $100 special assessment, and a term of supervised release of up to 5 years. The defendant understands that the penalties set forth in this paragraph are the maximum penalties that can be imposed by the Court at sentencing.

    b.    In Count 2, a violation of Title 18, Unites States Code, Section 1956(a)(1)(A)(i) (Money Laundering), for which the maximum possible sentence is a term of

1

imprisonment of 20 years, a fine of $500,000 or twice the value of the property involved in the transaction, whichever is greater, a mandatory $100 special assessment, and a term of supervised release of up to 3 years.

The defendant understands that the penalties set forth in this paragraph are the maximum penalties that can be imposed by the Court at sentencing.

2.      The defendant understands that, if it is determined that the defendant has violated any of the terms or conditions of supervised release, the defendant may be required to serve in prison all or part of the term of supervised release, up to 3 years, without credit for time previously served on supervised release.  As a consequence, a prison term imposed for a violation of supervised release may result in the defendant serving a sentence of imprisonment longer than the statutory maximum set forth in ¶ 1 of this agreement.

## II.    ELEMENTS AND FACTUAL BASIS

3.      The defendant understands the nature of the offenses set forth in ¶ 1 of this agreement and understands that if this case proceeded to trial, the government would be required to prove beyond a reasonable doubt the following elements of the crimes:

**Count 1**

   a. First, that there was a scheme to defraud a financial institution and to obtain money or funds under the custody or control of a financial institution by means of materially false or fraudulent pretenses, representations or promises;

   b. Second, that the defendant executed or attempted to execute the scheme with the intent to defraud; and

   c. Third, that at the time of the execution of the scheme, the financial institution met one or more the definitions set forth in 18 U.S.C. § 20 (financial institution defined).

**Count 2**

   a. First, that the defendant conducted or attempted to conduct a financial transaction;

   b. Second, which the defendant then knew involved the proceeds of unlawful activity; and

   c. Third, that the defendant acted with the intent to promote or further unlawful activity.

## FACTUAL BASIS

   4.    The defendant and the government agree to the following facts, which form the basis for the entry of the plea of guilty including relevant conduct:

   a.    Between on or about November 29, 2022, and on or about March 11, 2024, the defendant perpetrated a "check-kiting" scheme by sending hundreds of checks between various bank accounts with Five Star Bank ("FSB") and Kinecta Federal Credit Union ("Kinecta"), for the purpose of fraudulently inflating the balance of her various accounts. Through this scheme, the defendant ultimately defrauded FSB out of $20,907,000.

   b.    At all relevant times, FSB and Kinecta were insured by the Federal Deposit Insurance Corporation ("FDIC"), and were therefore "financial institutions" as defined by 18 U.S.C. § 20.

   c.    At all relevant times, the defendant was a controlling member of several business entities. Between on or about November 29, 2022, and on or about March 11, 2024, the defendant operated 10 business accounts at FSB and 7 business accounts at Kinecta for these various business entities.

d.  The defendant typically operated her check-kiting scheme by writing a check from one of her bank accounts for a dollar amount greater than what the bank account actually contained. Then, the defendant would deposit the over-valued check into another bank account that she controlled at a different financial institution.

e.  The defendant knew that banks typically place funds into a depositing account before confirming the funds in the withdrawing account. Accordingly, during this delay, the defendant could temporarily inflate the cash balance in her accounts at various financial institutions by writing over-valued checks that were still honored, despite the originating account having insufficient funds.

f.  Between on or about November 29, 2022, and on or about March 11, 2024, the defendant intentionally kited over 500 over-valued checks between her various bank accounts for the purpose of over-inflating her accounts. At all relevant times, the defendant perpetrated her scheme with the intent to defraud the financial institutions that she knew would credit her the full amount of the over-valued checks.

g.  The defendant admits that each time she wrote an over-valued check, she made a materially false or fraudulent representation to the financial institution depositing the check that there were sufficient funds to honor the check.

h.  The defendant further knew that the inflated account balance would only be temporary, since the depositing institution would eventually discover that the withdrawing account had insufficient funds once the depositing institution fully reviewed the transaction.

i.  Accordingly, with the intent to promote and further her fraudulent check-kiting scheme, the defendant would kite additional checks into the withdrawing accounts to allow the scheme to continue without detection. The acts of depositing these checks were financial transactions within the meaning of 18 U.S.C. § 1956. The defendant also knew at all relevant times that these checks were the proceeds of unlawful activity, namely, her check-kiting scheme.

j.  In March 2024, Kinecta ultimately dishonored the defendant's latest round of over-valued checks to the defendant's FSB accounts and charged back the amounts. Because the defendant had already spent approximately $20,907,000 from her various FSB accounts that she did not actually have, the charge-back resulted in an approximately $20,907,000 overdraw balance on her FSB accounts. These funds were under the custody or control of FSB within the meaning of 18 U.S.C. § 1344.

k.  The defendant spent the $20,907,000 in over-inflated funds on her various business ventures and personal items, such as real estate. At all relevant times, the defendant knew that the over-inflated funds she was spending were not

4

actually supported by her bank accounts and were instead the proceeds of her fraudulent check-kiting scheme.

l.       FSB was able to recover some funds from other holdings the defendant had at FSB. Accordingly, it ultimately suffered a loss of $18,979,005.79.

### III.    SENTENCING GUIDELINES

5.       The defendant understands that the Court must consider but is not bound by the Sentencing Guidelines (Sentencing Reform Act of 1984).

### BASE OFFENSE LEVEL

6.       The government and the defendant agree that Guidelines § 2S1.1(a)(1) applies to the offense of conviction and provides for a base offense level of 31.

### SPECIFIC OFFENSE CHARACTERISTICS
### U.S.S.G. CHAPTER 2 ADJUSTMENTS

7.       The government and the defendant agree that the following specific offense characteristics do apply:

     a.  The 2-level increase pursuant to Guidelines § 2S1.1(b)(2)(B) (the defendant violated 18 U.S.C. § 1956).

### ADJUSTED OFFENSE LEVEL

8.       Based on the foregoing, it is the understanding of the government and the defendant that the adjusted offense level for the offense of conviction is 33.

### ACCEPTANCE OF RESPONSIBILITY

9.       At sentencing, the government agrees not to oppose the recommendation that the Court apply the two (2) level decrease of Guidelines § 3E1.1(a) (acceptance of responsibility) and further agrees to move the Court to apply the additional one (1) level decrease of Guidelines § 3E1.1(b), which would result in a total offense level of 30.

## CRIMINAL HISTORY CATEGORY

10.    It is the understanding of the government and the defendant that the defendant's criminal history category is I.  The defendant understands that if the defendant is sentenced for, or convicted of, any other charges prior to sentencing in this action the defendant's criminal history category may increase.  The defendant understands that the defendant has no right to withdraw the plea of guilty based on the Court's determination of the defendant's criminal history category.

## ADJUSTMENT FOR ZERO-POINT OFFENDER

11.    It is the understanding of the government and the defendant that the defendant meets the criteria set forth in Guidelines Section 4C1.1(a)(1) – (10) (Adjustment for Certain Zero-Point Offenders), and as a result, a two-level downward adjustment applies, and the adjusted offense level is 28.

## GUIDELINES' APPLICATION, CALCULATIONS AND IMPACT

12.    It is the understanding of the government and the defendant that, with a total offense level of 28 and criminal history category of I, the defendant's sentencing range would be **a term of imprisonment of 78 to 97 months, a fine of $25,000 to $250,000, and a period of supervised release of 1 to 5 years**.  Notwithstanding this, the defendant understands that at sentencing the defendant is subject to the maximum penalties set forth in ¶ 1 of this agreement.

13.    The government and the defendant agree to the correctness of the calculation of the Sentencing Guidelines range set forth above.  The government and the defendant, however, reserve the right to recommend a sentence outside the Sentencing Guidelines range.

6

Specifically, the defendant reserves the right to argue that the $20,907,000 loss amount used to calculate the base offense level under Guidelines § 2S1.1(a)(1) does not accurately represent the severity of the defendant's fraud. This paragraph reserves the right to the government and the defendant to bring to the attention of the Court all information deemed relevant to a determination of the proper sentence in this action.

14.     The defendant understands that the Court is not bound to accept any Sentencing Guidelines calculations set forth in this agreement and the defendant will not be entitled to withdraw the plea of guilty based on the sentence imposed by the Court.

15.     In the event the Court contemplates any Guidelines adjustments, departures, or calculations different from those agreed to by the parties above, the parties reserve the right to answer any inquiries by the Court concerning the same.

## IV.    STATUTE OF LIMITATIONS

16.     In the event the defendant's plea of guilty is withdrawn, or conviction vacated, either pre- or post-sentence, by way of appeal, motion, post-conviction proceeding, collateral attack or otherwise, the defendant agrees that any charges dismissed pursuant to this agreement shall be automatically reinstated upon motion of the government and further agrees not to assert the statute of limitations as a defense to any federal criminal offense which is not time barred as of the date of this agreement. This waiver shall be effective for a period of six months following the date upon which the withdrawal of the guilty plea or vacating of the conviction becomes final.

## V.    REMOVAL

17.    The defendant represents that she is a citizen of the United States. However, if the defendant is not a citizen of the United States, the defendant understands that, if convicted, the defendant may be removed from the United States, denied citizenship, and denied admission to the United States in the future.

## VI.    GOVERNMENT RIGHTS AND OBLIGATIONS

18.    The defendant understands that the government has reserved the right to:

a.    provide to the Probation Office and the Court all the information and evidence in its possession that the government deems relevant concerning the defendant's background, character and involvement in the offense charged, the circumstances surrounding the charge and the defendant's criminal history;

b.    respond at sentencing to any statements made by the defendant or on the defendant's behalf that are inconsistent with the information and evidence available to the government;

c.    advocate for a specific sentence consistent with the terms of this agreement including the amount of restitution and/or a fine and the method of payment;

d.    modify its position with respect to any sentencing recommendation or sentencing factor under the Guidelines including criminal history category, in the event that subsequent to this agreement the government receives previously unknown information, including conduct and statements by the defendant subsequent to this agreement, regarding the recommendation or factor; and

e.    oppose any application for a downward departure and/or sentence outside the Guidelines range made by the defendant.

19.    The defendant agrees that any financial records and information provided by the defendant to the Probation Office, before or after sentencing, may be disclosed to the United States Attorney's Office for use in the collection of any unpaid financial obligation.

8

### VII.    RESTITUTION AND FINANCIAL PENALTY PROVISIONS

20.     The defendant understands, and the parties agree, that the offense of conviction is an offense listed under 18 U.S.C. § 3663A(c)(1), and therefore the Court must require restitution in the amount of $18,979,005.79 to be paid to Five Star Bank, as part of the sentence pursuant to Sentencing Guidelines § 5E1.1 and Title 18, United States Code, Section 3663A.

21.     The defendant understands that defendant will not be entitled to withdraw the plea of guilty based upon any restitution amount ordered by the Court.

22.     The defendant agrees that the defendant will not oppose bifurcation of the sentencing hearing under 18 U.S.C. § 3664(d)(5) if the victims' losses are not ascertainable prior to sentencing.

23.     The defendant agrees to disclose fully and completely all assets in which the defendant either has any property interest or over which the defendant exercises control, directly or indirectly, including those held by a spouse, nominee or other third party. The defendant agrees to make complete financial disclosure to the United States by truthfully executing a sworn financial statement by the deadline set by the United States, or if no deadline is set, no later than two weeks prior to the date of sentencing. The defendant agrees to authorize the release of all financial information requested by the United States, including, but not limited to, executing authorization forms for the United States to obtain tax information, bank account records, credit history, and social security information. The defendant agrees to discuss or answer any questions by the United States relating to the defendant's complete financial disclosure. The defendant will submit to an examination

9

under oath and/or a polygraph examination conducted by an examiner selected by the U.S. Attorney's Office on the issue of the defendant's financial disclosures and assets, if deemed necessary by the U.S. Attorney's Office. The defendant certifies that the defendant has made no transfer of assets in contemplation of this prosecution for the purpose of evading or defeating financial obligations that are created by the agreement and/or that may be imposed upon the defendant by the Court. In addition, the defendant promises that the defendant will make no such transfers in the future.

24.    The defendant understands and agrees that the Court, at the time of sentencing, will order that all monetary penalties imposed at that time (including any fine, restitution, or special assessment imposed in accordance with the terms and conditions of this plea agreement) are to be due and payable in full immediately and will be (i) subject to immediate enforcement as provided for in 18 U.S.C. § 3613, and (ii) submitted to the Treasury Offset Program (TOP) so that any federal payment or transfer of returned property the defendant receives may be offset and applied to federal debts but will not affect any periodic payment schedule set by the Court.

25.    Under the TOP program, the Department of the Treasury will reduce or withhold any of the defendant's eligible Federal payments by the amount of the defendant's debt. This "offset" process is authorized by the Debt Collection Act of 1982, as amended by the Debt Collection Improvement Act of 1996 and the Internal Revenue Code.    The government hereby provides the defendant with notice that 60 days after sentencing, unless the monetary judgment(s) ordered by the Court is paid in full immediately after sentencing, the government will refer the outstanding monetary judgment to TOP for the offset of any

pending federal payments, and the defendant agrees not to object or contest any such action by the government and waives any further notice.

26.    The defendant understands and acknowledges that any schedule of payments imposed by the Court at the time of sentencing is merely a minimum schedule of payments and does not, in any way, limit those methods available to the United States to enforce the judgment.  Further, the defendant agrees not to challenge or dispute any efforts by the government to enforce collection of any monetary penalties ordered by the Court.

27.    The defendant understands and agrees that under Title 18, United States Code, Section 3664(m), the government may use all available and reasonable means to collect restitution, and pursuant to Title 18, United States Code, Section 3664(n), if the defendant is ordered to pay restitution, or pay a fine, receives substantial resources from any source, including inheritance, settlement, or other judgment, during a period of incarceration, the defendant shall be required to apply the value of such resources to any restitution or fine still owed without objection.

28.    The defendant agrees that any funds and assets in which the defendant has an interest, which have been seized or restrained by the government or law enforcement as part of the investigation underlying this plea agreement, and not subject to forfeiture, will be used to offset any judgment of restitution and fine imposed pursuant to this plea agreement, or to satisfy any debts owed by the defendant to the United States and/or agencies thereof.

29.    To the extent that the defendant has an interest, the defendant authorizes the District Court Clerk to release any funds posted as security for the defendant's appearance

bond in this case, which funds shall be applied to satisfy the financial obligation(s) of the defendant pursuant to the judgment of the Court.

30.     The defendant is aware that voluntary payment of restitution prior to adjudication of guilt is a factor in considering whether the defendant has accepted responsibility under the United States Sentencing Guidelines §3E1.1.

## VIII.  APPEAL RIGHTS

31.     The defendant understands that Title 18, United States Code, Section 3742 affords a defendant a limited right to appeal the sentence imposed.  The defendant, however, knowingly waives the right to appeal and collaterally attack any component of a sentence imposed by the Court which falls within or is less than **a term of imprisonment of 78 to 97 months, a fine of $25,000 to $250,000, and a period of supervised release of 1 to 5 years**, notwithstanding the manner in which the Court determines the sentence.  In the event of an appeal of the defendant's sentence by the government, the defendant reserves the right to argue the correctness of the defendant's sentence.  The defendant further agrees not to appeal a restitution order which does not exceed the amount set forth in Section VII of this agreement.

32.     The defendant understands that by agreeing not to collaterally attack the sentence, the defendant is waiving the right to challenge the sentence in the event that in the future the defendant becomes aware of previously unknown facts or a change in the law which the defendant believes would justify a decrease in the defendant's sentence.

33.     The government waives its right to appeal any component of a sentence imposed by the Court which falls within or is greater than **a term of imprisonment of 78 to**

**97 months, a fine of $25,000 to $250,000, and a period of supervised release of 1 to 5 years,** notwithstanding the manner in which the Court determines the sentence. However, in the event of an appeal from the defendant's sentence by the defendant, the government reserves its right to argue the correctness of the defendant's sentence.

## IX.    FORFEITURE PROVISIONS

34.    Prior to or immediately after the entry of a plea of guilty as a condition of the plea, the defendant agrees not to contest any forfeiture or abandonment proceeding that has been brought by the government and agrees to immediately criminally forfeit all of the defendant's right, title and interest to any and all properties which are subject to forfeiture pursuant to Title 18, United States Code, Sections 982(a)(2), 981(a)(1)(C), and Title 28, United States Code, Section 2461(c), which is in the possession and control of the defendant or the defendant's nominees. That property includes:

      A.    **REAL PROPERTY:**

          i. The premises and real property with its buildings, improvements, fixtures, attachments and easements, known as 1372 Edgemere Drive, Rochester, New York, 1384 Edgemere Drive, Rochester New York, and 1390 Edgemere Drive, Rochester, New York; that is, all that tract or parcel of land, situate in the Town of Greece, County of Monroe and State of New York and more particularly described in a certain deed dated March 27, 2013, and recorded in Liber 11237, of deeds at page 551, of the Monroe County Clerk's Office.

          The premises and real property with its buildings, improvements, fixtures, attachments and easements, known as 1352 Edgemere Drive, Rochester, New York, 1400 Edgemere Drive, Rochester New York, 1405 Edgemere Drive, and 1406 Edgemere Drive, Rochester, New York, and 1409 Edgemere Drive,

Rochester, New York; that is, all that tract or parcel of land, situate in the Town of Greece, County of Monroe and State of New York and more particularly described in a certain deed dated August 1, 2023, and recorded in Liber 12870, of deeds at page 558, of the Monroe County Clerk's Office.

The above properties collectively referred to as "Crescent Beach Property"

## B.    CURRENCY:

i. The sum of all one million eight hundred fifty thousand dollars ($1,850,000.00) in United States currency that represents proceeds that defendant obtained from her involvement in the criminal conduct, which if not readily available will become a monetary judgment and will serve as a lien against the defendant's property, wherever situated, with interest to accrue at the prevailing rate per annum until fully satisfied in the event this amount is not located.

35.    The defendant also agrees that the monetary amount ($1,850,000.00) listed above is properly forfeitable to the government pursuant to Title 18, United States Code, Sections 982(a)(2), 981(a)(1)(C), and Title 28, United States Code, Section 2461(c). The defendant also admits that based upon the acts of the defendant, the monetary amount is no longer available for forfeiture, and thus the government has the right to seek forfeiture of substitute assets of the defendant pursuant Title 21, United States Code, Section 853(p). The defendant understands and agrees that the Court, at the time of sentencing, will order a Forfeiture Money Judgment which is due and payable in full immediately and subject to immediate enforcement by the government.

14

36.     All payments made by the defendant toward the Forfeiture Money Judgment shall be made by money order, certified check and/or official bank check, payable to the "U.S. Department of the Treasury." The defendant shall cause said payment(s) to be hand delivered or to be sent by overnight mail delivery to the United States Attorney's Office, Western District of New York, Asset Recovery Department, with the criminal docket number noted on the face of the instrument. The defendant consents to the restraint of all payments made toward the Forfeiture Money Judgment. The defendant also waives all statutory deadlines, including but not limited to deadlines set forth in Title 21, United States Code, Section 983. The defendant agrees to fully assist the government in effectuating the payment of the Forfeiture Money Judgment, by among other things, executing any documents necessary to effectuate any transfer of title to the United States. The defendant agrees that any funds and assets in which the defendant has an interest, which have been seized or restrained by the government or law enforcement as part of the investigation underlying this plea agreement, will be used to offset any Forfeiture Money Judgment imposed pursuant to this plea agreement, or to satisfy any debts owed by the defendant to the government and/or agencies thereof.

37.     The defendant further acknowledges that if the defendant cannot pay the full amount immediately, the defendant agrees that the conditions of Title 21, United States Code, Section 853(p) have been satisfied, and thus the government has the right to seek forfeiture of substitute assets of the defendant pursuant to Title 21, United States Code, Section 853(p) and Federal Rule of Criminal Procedure 32.2(e)(1)(B).

15

38.     The defendant agrees to fully assist the government in the identification and recovery of any property of the defendant to satisfy such judgment.  The defendant agrees to the forfeiture of such property and will take whatever steps are necessary to pass clear title to the government, including, but not limited to, surrender of title and execution of any documents necessary to transfer the defendant's interest to the government.  The defendant agrees to waive notice and not to object to any motions made by the government for substitute assets.  Further, the defendant consents to the entry of any such order of forfeiture for substitute assets.

39.     The defendant understands and agrees that unless the Forfeiture Money Judgment is paid in full immediately, federal law allows agencies to refer debts to the United States Department of the Treasury for the purpose of collecting debts through the Treasury Offset Program ("TOP").  Under this program, the Department of the Treasury will reduce or withhold any of the defendant's eligible Federal payments by the amount of the defendant's debt.  This "offset" process is authorized by the Debt Collection Act of 1982, as amended by the Debt Collection Improvement Act of 1996 and the Internal Revenue Code.  The government hereby provides the defendant notice that 60 days after sentencing, the government will refer the outstanding Forfeiture Money Judgment to TOP for the offset of any pending federal payments and waives any further notice.  The defendant agrees not to object or challenge any offset taken through TOP.

40.     The defendant agrees not to file a claim or petition seeking remission or contesting the forfeiture of any property against which the government seeks to satisfy the

Forfeiture Monetary Judgment in any administrative or judicial (civil or criminal) proceeding. The defendant further agrees not to assist any person or entity in the filing of any claim or petition seeking remission or contesting the forfeiture of any property against which the government seeks to satisfy the Forfeiture Money Judgment in any administrative or judicial (civil or criminal) forfeiture proceeding.

41.     To the extent that the defendant has an interest, the defendant authorizes the District Court Clerk to release any funds posted as security for the defendant's appearance bond in this case, not already being applied to restitution, which funds shall be applied to satisfy the Forfeiture Money Judgment.

42.     The defendant also agrees that the assets listed above are properly forfeitable to the government pursuant to Title 18, United States Code, Sections 982(a)(2), 981(a)(1)(C), and Title 28, United States Code, Section 2461(c). The defendant further agrees to fully assist the government in the forfeiture of the aforementioned property and to take whatever steps are necessary to pass clear title to the government, including, but not limited to surrender of title and execution of any documents necessary to transfer the defendant's interest in any of the above property to the government, as deemed necessary by the government.

43.     The defendant agrees not to file a claim or petition seeking remission or contesting the forfeiture of the property listed above in any administrative or judicial (civil or criminal) proceeding. The defendant further agrees not to assist any person or entity in the filing of any claim or petition seeking remission or contesting the forfeiture of the property

17

listed above in any administrative or judicial (civil or criminal) forfeiture proceeding. Further, if any third party files a claim to the property listed above, the defendant will assist the government in defending such claim.

44. After the acceptance of the defendant's guilty plea, and pursuant to Rule 32.2(b)(2) of the Federal Rules of Criminal Procedure, the Court will issue a Preliminary Order of Forfeiture for the property listed above. The defendant hereby waives any right to notice of such Preliminary Order of Forfeiture. The defendant further consents and agrees that the Preliminary Order of Forfeiture and a Final Order of Forfeiture shall issue and become final as to the defendant prior to sentencing and agrees that it shall be made part of the defendant's sentence and included in the judgment pursuant to Rule 32.2(b)(4) of the Federal Rules of Criminal Procedure. The defendant further agrees to waive any time restrictions or requirements as provided in Title 18, United States Code, Section 983, any notice provisions in Rules 32.2 and 43(a) regarding notice of the forfeiture in the charging instrument, announcement of the forfeiture at sentencing, and incorporation of the forfeiture in the judgment. The defendant knowingly and voluntarily waives her right to any required notice concerning the forfeiture of any monies and/or properties forfeited hereunder, including notice set forth in an indictment, information or administrative notice. The defendant acknowledges that the defendant understands that the forfeiture of property is part of the sentence that may be imposed in this case and waives any failure by the Court to advise the defendant of this, pursuant to Rule 11(b)(1)(J), at the time the guilty plea is accepted. Forfeiture of the defendant's property shall not be treated as satisfaction of any fine,

restitution, cost of imprisonment, or any other penalty the Court may impose upon the defendant in addition to forfeiture.

45.    The defendant knowingly, intelligently, and voluntarily waives her right to a jury trial on the forfeiture of the property. The defendant knowingly, intelligently, and voluntarily waives all constitutional, legal and equitable defenses to the forfeiture of the property in any proceeding, whether constitutional or statutory, including but not limited to, any defenses based on principles of double jeopardy, as to this criminal proceeding or any related civil or administrative proceeding, the Ex Post Facto clause of the Constitution, any applicable statute of limitations, venue, or any defense under the Eighth Amendment, including a claim of excessive fines.

46.    The defendant agrees that the above-described property is subject to forfeiture and waives any and all statutory and constitutional rights, including but not limited to time restrictions and notice provisions with respect to the final disposition or forfeiture of the above property.

47.    The defendant further agrees that the forfeiture of the aforementioned property as authorized herein shall not be deemed an alteration of the defendant's sentence. Forfeiture of the defendant's property shall not be treated as satisfaction of any fine, restitution, cost of imprisonment, any income taxes or any other penalty that the Court may impose upon the defendant in addition to forfeiture and shall survive bankruptcy. However it is understood by the defendant that the government may, in its discretion, recommend to the Attorney General

19

that any of the forfeited proceeds be remitted or restored to eligible victims of the offense, pursuant to Title 18, United States Code, Section 981(e), 28 C.F.R. Pt. 9, and other applicable law, it being understood that the United Attorney's Office has authority only to recommend such relief and that the final decision of whether to grant relief rests with the Department of Justice, which will make its decision in accordance with applicable law. The defendant understands that one factor that will be considered by the government, is whether the defendant has any assets, which have not been forfeited pursuant to this plea agreement, available to her to utilize to pay the restitution judgment and the defendant shall have no recourse in the event the restoration request is denied.

48.    The defendant agrees that in the event this plea agreement is voided for any reason, the agreement for forfeiture, abandonment and disposition of the real property and money judgment survives and shall be given full force and effect. The failure of the defendant to forfeit any property as required under this agreement, including the failure of the defendant to execute any document to accomplish the same on timely notice to do so, may constitute a breach of this agreement.

49.    The defendant agrees that if, for any reason, in any pleadings before the Court and orders issued by the Court, including but not limited to the Preliminary and/or Final Order of Forfeiture and the Judgment and Commitment, the government fails to properly identify an item to be forfeited, fails to include any item that is forfeitable under the applicable forfeiture statute in this case or includes a clerical error, the defendant will consent and not oppose any effort by the government to amend, correct or add to the description/list of items

subject to forfeiture in this case.  Additionally, to the extent necessary and at the discretion of the United States Attorney's Office, the defendant further agrees in the alternative, to the abandonment or civil forfeiture of any items that were excluded from the original description of items to be forfeited.  Finally, if not specially identified or listed above, the defendant agrees to the abandonment of any and all cellular phones, computers and electronic equipment seized by law enforcement in this case.

## X.    TOTAL AGREEMENT AND AFFIRMATIONS

50.    This plea agreement represents the total agreement between the defendant, **KATHERINE MOTT-FORMICOLA**, and the government.  There are no promises made by anyone other than those contained in this agreement.  This agreement supersedes any other prior agreements, written or oral, entered into between the government and the defendant.


TRINI E. ROSS
United States Attorney
Western District of New York

BY: 

NICHOLAS M. TESTANI
Assistant United States Attorney

Dated:  December 2, 2024

21

I have read this agreement, which consists of pages 1 through 22.  I have had a full opportunity to discuss this agreement with my attorney, David Rothenberg, Esq.  I agree that it represents the total agreement reached between me and the government.  No promises or representations have been made to me other than what is contained in this agreement.  I understand all of the consequences of my plea of guilty.  I fully agree with the contents of this agreement.  I am signing this agreement voluntarily and of my own free will.

Katherine Mott-Formicola
Defendant

Dated:  December ___, 2024

David Rothenberg, Esq.
Attorney for the Defendant

Dated:  December ___, 2024